## MENDENHALL *et al.* v. WALTERS *et al.*

No. 6562.   Opinion Filed May 9, 1916.

(157 Pac. 732.)

1.   **APPEAL AND ERROR—Review—Questions of Fact—Equitable Cases.**  In a case of purely equitable cognizance, it is the duty of the Supreme Court, when the sufficiency of the evidence to support the findings of the trial court is challenged, to consider the whole record and to weigh all the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, to render or cause to be rendered such judgment as should have been rendered in the trial court.

2.   **TRUSTS—Resulting Trusts—Furnishing Consideration for Conveyance to Another.**  In the absence of circumstances showing a contrary intention, where property is conveyed to a husband in consideration of money or assets furnished by or belonging to the wife, particularly where such conveyance is made to the husband without the wife's knowledge or consent, a trust results in favor of the wife with respect to such property.

3.   **SAME—Enforcement of Resulting Trust.**  The interest of the cestui que trust in a resulting trust in real estate is an equitable estate in the land, the legal title to which is vested in the trustee, and, as such, may be enforced by the heirs of the cestui que trust against the heirs of the trustee.

4.   **SAME—Transaction Between Husband and Wife—Presumption.**  Where a husband purchases lands paying therefor with his own funds and causes the conveyance to be made jointly to himself and wife, the law presumes that the interest conveyed to the wife was intended as an advancement or a gift, and in the absence of evidence to the contrary, no resulting trust exists therein in favor of the husband.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Action by Isaac Mendenhall and others against Andrew J. Walters and others.   Judgment for defendants, and plaintiffs bring error.   Reversed and remanded, with directions.

*William M. Matthews,* for plaintiffs in error.

*W. E. Foster* and *E. M. Carter,* for defendants in error.

HARDY, J.   This action was commenced in the district court of Okmulgee county by plaintiffs in error, who will be hereafter designated as plaintiffs, against the defendants in error, who will be designated as defendants, to declare and enforce a trust in 80 acres of land.   The plaintiffs are the brothers and sisters and the issue of deceased brothers and sisters of one Delilah Walters, deceased, who departed this life on January 7, 1911, leaving her surviving no issue nor father or mother, and who left as her sole and only heirs the plaintiffs and her husband, John Walters.   It is further alleged that defendants are children of John Walters, deceased, who died on January 14, 1911, leaving as his sole surviving heirs the defendants.   Trial was had on the 9th day of March, 1914, resulting in judgment for defendants.

Several assignments of error are urged, all of which, with the exception of one, present the question of whether the judgment of the trial court is supported by the evidence.   The other assignment predicates error upon the admission of certain evidence over the objection of plaintiffs.   Defendants in error make no question as to the propositions of law urged upon this appeal, and say the determination of this case rests solely upon a question of fact, that question being whether the funds of Delilah Walters purchased a certain 40-acre tract of land in Illinois, the proceeds of which formed the consideration for the purchase of the land in Oklahoma, or whether said land was purchased and paid for by John Walters.   The court found that the land in Illinois was purchased and

paid for by John Walters, and not by the moneys of his wife, Delilah.

This being an equity case, and the sufficiency of the evidence to support the findings of the court being challenged, it is the duty of this court to consider the whole record, to weigh the evidence, and determine whether the judgment of the trial court is clearly against the weight thereof, and, if it shall determine this to be so, to render or cause to be rendered such judgment as should have been rendered by the trial court. *Schock v. Fish,* 45 Okla. 12, 144 Pac. 584; *Wimberly v. Winstock et al.,* 46 Okla. 645, 149 Pac. 238.

The undisputed facts are that Delilah Walters previous to her marriage with John Walters had been the wife of one Dave Toney, from whom she obtained a divorce about the year 1879, and in the settlement of property rights as betwen her and Toney she was awarded by the decree of separation certain personal property, consisting of two sows, ten shoats, twelve pigs, one bay stallion, one black mare, and two-thirds interest in five acres of corn; that she, in fact, received this property in accordance with the decree is testified to by various witnesses and denied by none. After her divorce from Toney she remained single about five years. A part of the time she kept house for her father, and afterwards she hired out to various persons and worked as a field hand during the harvest, hoed corn, and performed other work of like character. The witnesses describe her as a strong, healthy woman, a hard worker, and very frugal in her habits. She could neither read nor write. At the time of the marriage to John Walters in 1884 or 1885 the evidence shows she then had $300 or $350, and she made statements to various persons that she was going to in-

vest her money in a farm, and after the purchase always claimed that her money paid for same. The evidence shows that John Walters had no property; that he was a man much older than Delilah, being an ex-soldier, drawing a small pension, and was not a strong man physically, having been ruptured. Shortly after their marriage they purchased a 40-acre tract of land in Jefferson county, Ill., and the deed thereto was taken in the joint name of John Walters and Delilah Walters, and recites a consideration of "$300 in hand paid."

After the purchase of the land in Illinois the parties lived thereon for about 20 years, and by their joint labors cleared the land, placed the same in a state of cultivation, and otherwise improved and cultivated it. In the work of clearing said lands the wife, Delilah, worked the same as her husband, performing like labors by assisting in clearing and otherwise improving the land, and in this work they were aided by the sons of the husband. In 1904 the parties concluded to sell the Illinois land and move to Oklahoma, and said land was sold for a consideration of $1,425. Eighty acres in Okmulgee county was purchased for $1,000, which sum was paid out of the moneys received from the sale of the 40-acre tract in Illinois. It is contended that John and Delilah agreed that title to the land in Oklahoma should be taken in the name of the wife, and there is evidence in the record tending to support this contention, but the title was, in fact, taken in the name of the husband, John Walters. Delilah always claimed the land as her own, and upon one occasion, when the deed was read in her presence showing the title to be in him and his heirs, she raised a quarrel with him, stating that he had agreed to have the deed made to

her, and he replied that it was; that she was one of his heirs.

Upon this state of facts plaintiffs claim that a trust resulted in favor of the wife for a one-half interest in the land in Oklahoma, and that, as her surviving heirs, they are entitled to have a trust declared against said land in their favor. By section 6660, Rev. Laws 1910, it is enacted:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

See *Helvie v. Hoover*, 11 Okla. 687, 69 Pac. 958.

The general rule in this regard, as applied to transactions involving money or property of the wife, is stated in section 1049, Pomeroy's Equity Jurisprudence, as follows:

"Another important form of trust arises from the acts of persons already possessing some fiduciary character or standing in some fiduciary relation. Whenever a trustee or other person in a fiduciary capacity, acting apparently within the scope of his powers—that is, having authority to do what he does—purchases property with trust funds, and takes the title thereto in his own name, without any declaration of trust a trust arises with respect to such property in favor of the *cestui que trust* or other beneficiary. Equity regards such a purchase as made in trust for the person beneficially interested, independently of any imputation of fraud, and without requiring any proof of an intention to violate the existing fiduciary obligation, because it assumes that the purchaser intended to act in pursuance of his fiduciary duty, and not in violation of it. This doctrine is of wide application; it extends to trustees, executors, and administrators, directors of corporations, guardians,

committee of lunatics, agents using money of their principals, partners using partnership funds, husbands purchasing property with money belonging to the separate estate of their wives, parents and children, and all persons who stand in fiduciary relations towards others. Equity jurisdiction contains few more efficient doctrines than this in maintaining the beneficial rights of property." 1 Perry, Trusts, section 127; 39 Cyc. 138; *English v. Law*, 27 Kan. 242; *Condit v. Bigelow*, 54 Atl. 160; *Mosteller et al. v. Mosteller*, 40 Kan. 658; *Loften v. Witboard*, 92 Ill. 461; *Mitchell v. Colglazier*, 106 Ind. 464, 7 N. E. 199; *Beddow v. Sheppard*, 118 Ala. 474, 23 South. 662; *Stickney v. Stickney*, 131 U. S. 227, 9 Sup. Ct. 677, 33 L. Ed. 136; *Wright v. Wright*, 26 L. R. A. (N. S.) 161, note; *Stonecipher v. Kear*, 127 Am. St. Rep. p. 256, note.

In the light of the foregoing authorities, if the funds of the wife purchased the property in Illinois, and the title thereto was taken in the joint name of herself and husband without her knowledge, a trust would result in her favor in that portion of the title which stood in the name of the husband.

If, upon the other hand, the consideration was paid out of the pension money of the husband, when title to said land was taken in the joint name of husband and wife, the wife would become joint owner of said land, and no trust would result in favor of the husband for that portion of the land the title to which stood in the name of the wife. The rule is, where a husband purchases lands with his own money and takes title thereto in the name of his wife or in the joint name of himself and wife, no trust arises in favor of the husband by reason thereof in the lands standing in the name of the wife, but the presumption of law is, in the absence of evidence to the contrary,

that an advancement or gift was intended. This is so because in law the legal obligation rests upon the husband to support the wife. *Wright v. Wright,* 242 Ill. 71, 89 N. E. 789, 26 L. R. A. (N. S.) 161; *Siling v. Hendrickson,* 193 Mo. 365, 92 S. W. 105; *Shaw v. Bernal,* 163 Cal. 262, 124 Pac. 1012; *Hayes v. Horton,* 46 Ore. 597, 81 Pac. 386; 1 Perry, Trusts, section 143; 3 Pomeroy, Eq. Jur. 1039; 39 Cyc. 138.

As we have seen, the deed to the land in Illinois was taken in the joint names of John and Delilah, and in any view of the facts the wife would be owner of at least a one-half interest in said land, and when same was sold the funds received therefrom would be the common fund of both, and when the land in Oklahoma was purchased and paid for out of this common fund and title taken in the name of the husband without the consent of the wife, a resulting trust would arise in the property so purchased in favor of the wife to the extent that her interest in the consideration paid therefor would bear to the whole price paid for the land, which in any event would be one-half. Being joint owners of the fund which constituted the purchase price, she would be the owner in equity of a joint estate with her husband in the land so purchased. *Skehill v. Abbott,* 184 Mass. 145, 68 N. E. 37; *Springer v. Young et al.,* 14 Ore. 280, 12 Pac. 400; *Blum v. Rogers,* 71 Tex. 668, 9 S. W. 595; *Bergstrasser et al. v. Sayre et al.,* 42 N. J. Eq. 488, 10 Atl. 710; *Haney v. Legg et al.,* 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81; *Bible v. Marshall,* 103 Tenn. 324, 52 S. W. 1077; *Jones et al. v. Elkins,* 143 Mo. 647, 45 S. W. 261; *Stonecipher v. Kear,* 127 Am. St. Rep. 258, note.

Having reached the conclusion that under any view of the case a trust resulted in favor of the wife to the extent of a half interest in the real estate purchased, such interest may be enforced by the plaintiffs in this action. In *Flesner v. Cooper*, 39 Okla. 133, 134 Pac. 379, quoting from section 1043, Pomeroy's Equity Jurisprudence, it was said:

"The interest of the *cestui que trust* in a resulting trust is not a mere 'equity'; it is an equitable estate in the land or other thing of which the legal title is vested in the trustee, and, as such, it may be conveyed, transferred, devised, or otherwise dealt with as property. It is valid, and may be enforced not only against the trustee, but against the heirs, devisees, personal representatives, and all others who derive title from him as volunteers or purchasers with notice, but, being a purely equitable interest, it is cut off and destroyed as against all *bona fide* purchasers or mortgagees from the trustee for a valuable consideration and without notice. The *cestui que trust* is entitled to the remedy of compelling a conveyance or assignment of the legal estate to himself by the trustee, or perhaps, in some instances, of compelling the trustee to hold the property for the benefit of the beneficiary, and subject to his power of enjoyment, control, and disposition.

The judgment is reversed, and the cause remanded, with directions to the trial court to render judgment for the plaintiffs in accordance with the prayer of their petition.

All the Justices concur, except THACKER, J., absent.